J-S43007-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| IN RE: D. L.-P. H., T.R.H., T.L.L.H. | : | IN THE SUPERIOR COURT |
| | : | OF PENNSYLVANIA |
| | : | |
| APPEAL OF: J.C.A-G., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1426 WDA 2017 |

Appeal from the Decrees entered August 28, 2017
In the Court of Common Pleas of Blair County
Orphans' Court at Nos:  2017 AD 31;
2017 AD 31A; 2017 AD 31B

BEFORE:   STABILE, J., DUBOW, J., and NICHOLS, J.

MEMORANDUM BY STABILE, J.:                    FILED DECEMBER 11, 2018

J.C.A.-G. ("Mother") appeals from the decrees involuntarily terminating her parental rights to her sons, D.L.-P. H., born in January 2009; T.R.H., born in June 2007; and T.L.L.H., born in June 2006 (collectively, "Children").[1] Mother's court-appointed counsel has filed a petition for leave to withdraw as counsel and a brief pursuant to Anders v. California, 386 U.S. 738 (1967). After review, we deny counsel's petition.  In addition, we vacate the decrees as to Mother without prejudice and remand for proceedings consistent with this memorandum.

_____

[1] In the same decrees, the orphans' court involuntarily terminated the parental rights of the Children's father, R.H. ("Father").  He did not file a notice of appeal, and he is not a party to this appeal.

The relevant facts and procedural history are as follows. On February 3, 2016, Children were placed in the emergency custody of the Blair County Children, Youth, and Families ("CYF") after investigation of allegations of Mother's physical abuse of Children. They were adjudicated dependent on February 19, 2016. On April 1, 2016, Children were placed in kinship care with their paternal uncle and aunt, J.M. and D.M.

CYF established family service plan objectives for Mother in furtherance of Children's permanency goal of reunification. She participated in supervised visits with Children for two hours twice per week until May of 2016, at which time she was incarcerated due to drug-related criminal charges. In May of 2017, Mother was sentenced to a term of incarceration of ten to twenty years, which she is serving at State Correctional Institution ("SCI") Muncy.

On July 25, 2017, CYF filed motions for an eighteen-month permanency review hearing. On August 3, 2017, CYF filed petitions for the involuntary termination of Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b). The orphans' court held a combined permanency review and involuntary termination of parental rights hearing on August 15, 2017, at which time D.L.-P.H. was eight years old; T.R.H. was ten years old; and T.L.L.H. was eleven years old. Children were represented during the proceedings by Guardian ad litem ("GAL"), Aimee L. Willett, Esquire, who supported CYF's petitions to involuntarily terminate Mother's parental rights.

Mother was represented by court-appointed counsel, Richard M. Corcoran, Esquire. However, Mother did not testify or appear on her own behalf.

The orphans' court admitted Children's dependency records into evidence. Counsel for the parties stipulated to the facts alleged in CYF's permanency review petition. CYF presented testimony from the following witnesses: Wendy Whitlock, a therapist at Home Nursing Agency; Tawnya Plunkard, CYF caseworker; Jessica Garlena, case manager at Home Nursing Agency; D.M., kinship mother; and J.M., kinship father.[2]

By decrees dated August 15, 2017, the orphans' court involuntarily terminated Mother's parental rights. On September 19, 2017, Mother, acting pro se, mailed a notice of appeal from prison, which the prothonotary docketed on September 25, 2017. On April 7, 2018, Attorney Corcoran filed a petition to withdraw as counsel and an Anders brief, which we review first.[3] See

_____

[2] The kinship parents testified that they wish to relinquish custody of the two older children and place them in separate homes with J.M.'s relatives. N.T., 8/15/17, at 63-66, 76-77. The kinship parents testified that they desire D.L.-P.H., the youngest child, to remain in their custody. Id. at 64, 76. J.M. testified that he and his wife told Children about their plan to separate them. Id. at 77. Children remained silent in response. Id. Therefore, J.M. does not know how Children feel about being separated. Id.

[3] On May 11, 2018, Attorney Corcoran filed a revised petition to withdraw as counsel and a revised Anders brief pursuant to this Court's directive for him to serve upon Mother and file a revised petition with a proper letter to Mother advising her of her rights. Specifically, we directed that the letter inform Mother that, if she chooses to pursue her rights, she must act immediately. Mother has neither retained private counsel nor proceeded pro se on appeal.

*Commonwealth v. Smith*, 700 A.2d 1301, 1303 (Pa. Super. 1997) ("When faced with a purported *Anders* brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw.").

In *In re V.E.*, 611 A.2d 1267 (Pa. Super. 1992), this Court extended the *Anders* principles to appeals involving the termination of parental rights. In *Commonwealth v. Santiago*, 978 A.2d 349 (Pa. 2009), our Supreme Court explained, "the major thrust of *Anders* . . . is to assure that counsel undertakes a careful assessment of any available claim that an indigent appellant might have." *Id.* at 358. The Court stated that this "is achieved by requiring counsel to conduct an exhaustive examination of the record and by also placing the responsibility on the reviewing court to make an independent determination of the merits of the appeal." *Id.*

In order to be permitted to withdraw, counsel must meet three procedural requirements: 1) petition for leave to withdraw and state that, after making a conscientious examination of the record, counsel has determined that the appeal is frivolous; 2) furnish a copy of the *Anders* brief to the appellant; and 3) advise the appellant that he or she has the right to retain private counsel or raise, pro se, additional arguments that the appellant deems worthy of the court's attention. *See Commonwealth v. Cartrette*, 83 A.3d 1030, 1032 (Pa. Super. 2013) (en banc) (citation omitted). With respect to the third requirement, this Court has held that counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising

him or her of their rights." Commonwealth v. Millisock, 873 A.2d 748, 752 (Pa. Super. 2005).

Additionally, an Anders brief must comply with the following requirements:

(1) provide a summary of the procedural history and facts, with citations to the record;

(2) refer to anything in the record that counsel believes arguably supports the appeal;

(3) set forth counsel's conclusion that the appeal is frivolous; and

(4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

Santiago, 978 A.2d at 361. "Once counsel has satisfied the above requirements, it is then this Court's duty to conduct its own review of the trial court's proceedings and render an independent judgment as to whether the appeal is, in fact, wholly frivolous." Commonwealth v. Goodwin, 928 A.2d 287, 291 (Pa. Super. 2007) (en banc) (citation omitted).

Here, Attorney Corcoran filed a petition to withdraw, certifying that, after a thorough and conscientious review of the record, he has determined that Mother's appeal is frivolous. Counsel attached to his petition a copy of his letter to Mother, advising her that she may obtain new counsel or raise additional issues pro se. Counsel also filed a brief, which includes a summary of the history and facts of the case, a potential issue that could be raised by Mother, and counsel's assessment of why the appeal is frivolous, with citations

to relevant legal authority. Accordingly, counsel has complied with the technical requirements of Anders, Santiago, and Millisock. We, therefore, may proceed with our independent review of the record and the following issue presented in the Anders brief: "Whether there are no nonfrivolous issues to be raised on behalf of [Mother] relative to this Court having jurisdiction to hear the present appeal?" Anders brief at 6.

Attorney Corcoran concludes that this Court does not have jurisdiction over this appeal, and that he "cannot present any nonfrivolous arguments on behalf of [Mother]." Anders brief at 8. His conclusion is premised on the assertion that the involuntary termination decrees were entered on August 15, 2017. Because Mother's pro se appeal was filed on September 19, 2017,[4] he asserts that her appeal is untimely. Further, Attorney Corcoran filed a motion to appeal nunc pro tunc in the orphans' court, along with a notice of appeal and a concise statement of errors complained of on appeal, on October 11, 2017.[5] The court agreed that Mother's pro se appeal filing is untimely but found no breakdown in the operations of the court. See Opinion and Order,

_____

[4] See Thomas v. Elash, 781 A.2d 170, 176 (Pa. Super. 2001) (holding that "[A] legal document is deemed filed by an incarcerated litigant, proceeding pro se, on the date it is delivered to the proper prison authority or deposited in the prison mailbox.").

[5] Attorney Corcoran alleged in his motion for nunc pro tunc relief that the decrees were entered on the docket on August 16, 2017, and that Mother deposited the notice of appeal in the prison mailbox on September 19, 2017. On this basis, he concluded that Mother's pro se filing is untimely.

10/17/17; see also *In the Interest of M.S.K.*, 936 A.2d 103, 105 (Pa. Super. 2007) ("As a general matter, a Trial Court may grant an appeal nunc pro tunc when a delay in filing [an appeal] is caused by extraordinary circumstances involving fraud or some breakdown in the court's operation through a default of its officers."). Therefore, on October 17, 2017, the court denied counsel's request to appeal nunc pro tunc.

The following procedural rules are applicable. Pa.R.A.P. 903 provides, "the notice of appeal required by Rule 902 . . . shall be filed within 30 days after the entry of the order from which the appeal is taken." Pa.R.A.P. 903(a).

> Additionally, this Court can raise jurisdictional issues sua sponte. *Commonwealth v. Coolbaugh*, 770 A.2d 788, 791 (Pa. Super. 2001). . . . This Court "may not enlarge the time for filing a notice of appeal...." Pa.R.A.P. 105(b). Absent a breakdown in the operations of the court, "[t]ime limitations on the taking of appeals are strictly construed and cannot be extended as a matter of grace." *Commonwealth v. Perez*, 799 A.2d 848, 851 (Pa. Super. 2002), appeal denied, 578 Pa. 716, 854 A.2d 967 (2004) (internal citations omitted)[;] [s]ee also *Commonwealth v. Dreves*, 839 A.2d 1122 (Pa. Super. 2003) (en banc).

*Commonwealth v. Valentine*, 928 A.2d 346, 349 (Pa. Super. 2007). The 30-day appeal period is jurisdictional in nature, and an untimely appeal divests this Court of jurisdiction. *In re J.M.P.*, 863 A.2d 17, 19 (Pa. Super. 2004).

Pa.R.A.P. 108(b) provides that the date of entry of an order is "the day on which the clerk makes the notation in the docket that notice of entry of the order has been given as required by Pa.R.C.P. 236(b)." Pa.R.A.P. 108(b). Rule 236(b) provides, "The prothonotary shall note in the docket the giving of the notice. . . ." Pa.R.C.P. 236(b). Moreover, when there is no date of entry

of the order on the docket, the 30-day appeal period is not triggered. See Frazier v. City of Philadelphia, 735 A.2d 113, 115 (Pa. 1999) (appeal period was not triggered where appellant received notice of order but order was not entered on docket pursuant to Rule 236(b)).

The certified dockets in the subject matter do not include a notation that notice of entry has been given as required by Pa.R.C.P. 236(b). Therefore, formal entry of the decrees did not occur, and the appeal period was not triggered. As such, Mother's pro se appeal, which was filed on September 19, 2017, is not untimely, and Attorney Corcoran's request in the orphans' court for nunc pro tunc relief was unnecessary. It follows that the October 17, 2017 order denying Attorney Corcoran's request has no legal effect. Accordingly, counsel's petition to withdraw is denied.

In addition, on October 16, 2018, the GAL filed in this Court a motion to quash Mother's appeal. The GAL asserts that this Court is without jurisdiction to decide Mother's appeal due to the orphans' court's order denying the request for an appeal nunc pro tunc.[6] Because we have concluded that Mother's appeal is timely, and, therefore, the October 17, 2017 order has no legal effect, we deny the GAL's motion to quash.

Further, our review of the record presents an issue regarding whether Children were denied legal counsel during the involuntary termination

---

[6] Likewise, in its appellee brief, CYF argues that Mother's appeal should be quashed as untimely.

proceeding. Pursuant to 23 Pa.C.S. § 2313(a), a child who is the subject of a contested involuntary termination proceeding has a statutory right to counsel who discerns and advocates for the child's legal interests, which our Supreme Court has defined as a child's preferred outcome.[7] See In re T.S., 192 A.3d 1080 (Pa. 2018) (citing In re Adoption of L.B.M., 161 A.3d 172 (Pa. 2017)). Because the right to counsel belongs to the child who is unable to address a deprivation of his or her right to counsel on his or her own behalf, we must address this issue sua sponte. See In re Adoption of T.M.L.M., 184 A.3d 585, 588 (Pa. Super. 2018) ("This Court must raise the failure to appoint statutorily-required counsel for children sua sponte, as children are unable to raise the issue on their own behalf due to their minority.") (citing In re K.J.H., 180 A.3d 411, 414 (Pa. Super. 2017)).

The T.S. Court held,

[W]here there is no conflict between a child's legal and best interests, an attorney-guardian ad litem representing the child's best interests can also represent the child's legal interests. . . . [M]oreover, if the preferred outcome of a child is incapable of

_____

[7] Section 2313(a) provides:

(a) Child.--The court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents. The court may appoint counsel or a guardian ad litem to represent any child who has not reached the age of 18 years and is subject to any other proceeding under this part whenever it is in the best interests of the child. No attorney or law firm shall represent both the child and the adopting parent or parents.

23 Pa.C.S. § 2313(a).

> ascertainment because the child is very young and pre-verbal, there can be no conflict between the child's legal interests and his or her best interests; as such, the mandate of Section 2313(a) of the Adoption Act that counsel be appointed "to represent the child," 23 Pa.C.S. § 2313(a), is satisfied where the court has appointed an attorney-guardian ad litem who represents the child's best interests during such proceedings.

Id. at 1092-1093.

Instantly, in the underlying dependency matter, the juvenile court appointed Attorney Willett to serve as Children's GAL by order dated February 4, 2016. However, in the subject contested termination of parental rights proceeding, the orphans' court did not issue an order appointing counsel to represent Children pursuant to Section 2313(a). In fact, the orphans' court identified Attorney Willett as Children's GAL at the outset of the termination proceeding, but nothing in the record indicates that the court appointed her after conducting a conflict-of-interest analysis and determining that Children's legal and best interests are not in conflict. See N.T., 8/15/17, at 1.

Further, Attorney Willett did not set forth in the record Children's preferred outcome. There is nothing in the record to indicate that Attorney Willett met with or interviewed Children, then ages eight, ten, and eleven, in an attempt to ascertain their preferred outcome and if their legal and best interests aligned. The record does not reveal that Attorney Willett advocated for Children's legal interests and followed their direction. Indeed, Attorney Willett cross-examined only one witness, D.M., the kinship mother, during which she inquired whether Children sleep in separate bedrooms and if she is

willing to coordinate visits between Children if they are placed in separate kinship homes. See id. at 71-72. In her closing statement to the court at the conclusion of the testimonial evidence, Attorney Willett, without explanation, stated that she supports the termination of Mother's parental rights. Id. at 81. Thereafter, she requested that the court "hear from the boys as well before we wrap up today." Id. The court replied as follows.

> BY THE COURT: Would you want that to be part of the record, Attorney Willett, or do you want me just to talk to them informally?
>
> BY ATTORNEY WILLETT: Informally, unless counsel wish for it to be on the record.
>
> BY THE COURT: Counsel, what I usually do is whenever children are here I usually speak to them before the hearing or after unless I know for a fact they're going to be witnesses during the proceeding. In this case I was advised that they would not be testifying. So I normally would meet with them. I usually do that informally done in the play area of CYF. Is there any objection if I do that in this particular case?
>
> BY ATTORNEY [FOR CYF]: No, Your Honor.
>
>                                        . . .
>
> BY ATTORNEY CORCORAN: No.
>
> BY THE COURT: Thank You. Thank you. So I'll stop down afterwards then.

Id. at 82. Because the court's "informal" meeting with Children was not made a part of the record, there is no indication in the record whether Children's legal and best interests aligned.

Accordingly, we are constrained to vacate the decrees without prejudice and remand for the orphans' court to appoint legal-interests counsel for Children pursuant to Section 2313(a). Such counsel must attempt to ascertain Children's preferred outcome as to Mother by interviewing Children directly, and to follow Children's direction to the extent possible and advocate in a manner that comports with their legal interests. See In re D.M.C., 166 A.3d 322 (Pa. Super. 2018) (vacating order involuntarily terminating the mother's parental rights without prejudice and remanding due, in part, to the children's attorney failing to attempt to ascertain their preferred outcome).

Children's counsel may also serve as GAL only if a conflict-of-interest analysis by the orphans' court reveals that no conflict exists between Children's legal and best interests, and this should be noted on the record. See T.S., supra at 1092; see also D.L.B., supra.

Once Children's preferred outcomes are identified, Children's counsel shall notify the orphans' court whether termination of Mother's parental rights is consistent with Children's legal interests. If the court determines that there is no conflict between Children's legal and best interests, then it may re-enter the original decrees. However, if the court determines that Children's legal interests are different from their best interest, then the court shall conduct a new involuntary termination hearing as to Mother. If Children have different preferred outcomes as to Mother, Children's counsel shall inform the orphans'

court, and the court shall appoint separate legal-interests counsel for each child and conduct further proceedings consistent with this memorandum.

Decrees vacated as to Mother without prejudice to permit the orphans' court to reenter the original decrees if a new termination hearing is not required. Case remanded for proceedings consistent with this memorandum.

Petition to withdraw as counsel denied. Motion to quash denied.

Jurisdiction relinquished.

Judge Nichols joins the memorandum.

Judge Dubow files a concurring and dissenting statement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  12/11/2018